William J. McKECHNIE and Edythe McKechnie, Plaintiffs and Respondents,

v.

BISMARCK LUMBER COMPANY, Western Concrete Products and W. T. Jennings Lumber Co., Defendants and Appellants,

and

State of North Dakota et al., Defendants.

Donald D. HALL and Patricia A. Hall, Plaintiffs and Respondents,

v.

W. T. JENNINGS LUMBER CO. and Bismarck Lumber Co., Defendants and Appellants,

and

State of North Dakota et al., Defendants.

Richard E. RADSPINNER and Irene Radspinner, Plaintiffs and Respondents,

v.

BISMARCK LUMBER CO., Western Concrete Products and W. T. Jennings Lumber Co., Defendants and Appellants,

and

State of North Dakota et al., Defendants.

Nos. 7928–7930.

Supreme Court of North Dakota.

April 17, 1962.

Saefke & Rose, Bismarck, for defendants and appellants, Bismarck Lumber Company and Meisner-Anderson Company, successor in interest to Western Concrete Products Co.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, for defendant and appellant W. T. Jennings Lumber Co., a corporation.

Rausch & Chapman, Bismarck, for plaintiffs and respondents.

Conmy & Conmy, Bismarck, for plaintiffs.

BURKE, Judge (On reassignment).

These three cases are companion cases to Schaffer v. Smith et al. (ND) 113 N. W.2d 668, recently decided by this court. In each of these cases plaintiffs sought to quiet title to described real property and in each case the defendants, by answer, asserted mechanics liens for unpaid accounts for materials and supplies furnished for the construction of homes upon the described real property. After trial of the cases judgments decreeing the claimed liens invalid were rendered against each of the appealing defendants.

In the McKechnie case the appellants are Bismarck Lumber Company, Western Concrete Products and W. T. Jennings Lumber Co. They claimed liens in the amounts of $1013.40, $1069.02 and $837.50 respectively. In the Hall case the appellants are W. T. Jennings Lumber Co. and Bismarck Lumber Co. They claimed liens in the amounts of $1451.29 and $2237.13, respectively. In the Radspinner case the appellants are Bismarck Lumber Company, Western Concrete Products and W. T. Jennings Lumber Co.

They claimed liens in the amount of $1400.-21, $251.24 and $1112.92 respectively.

These cases had their origin in the failure of a low cost housing promotion instituted by R & H Construction Co. which was owned by Raymond Hillestad, and Wanda Hillestad, his wife, and managed and operated by Raymond Hillestad. In furtherance of this promotion R & H Construction Co. acquired certain of Lounsberry's Outlots, located on the east side of Bismarck, and together with John Davis, an owner of others of the lots, replatted Lounsberry's Outlots 17, 18, 19, 20 and 24, into residential lots. This replat was filed May 10, 1954.

Originally R & H Construction Co. built homes on speculation, that is to say: without advance orders and relying upon its ability to sell the houses after they were completed. At a later time not shown by the record the plan was changed. Under the new plan real estate brokers were commissioned to sell homes that were to be built upon lots selected by the prospective purchasers. Although most of the purchasers selected lots in the replat of Lounsberry's Outlots, there was no requirement to do so. However, in every instance a single contract was entered into for the purchase of a house and lot and the single sum mentioned in the contract included the total price, to the purchaser, of both the house and lot. The whole transaction, however, was very involved and required several transactions in addition to the original contract.

First the prospective purchaser would select the plan of the house he wanted, next he would select the vacant lot upon which he wished to have the house built. He would then enter into a contract with R & H Construction Co. to build a house on the selected lot. Thereafter in a series of simultaneous transactions he would secure a deed to the selected lot, and execute a mortgage thereon for the amount of the purchase price less his down payment. Upon the recording of the deed and mortgage, the loaning company, mortgagee, would pay the seller of the lot the purchase price thereof and agree to pay the balance of the sum stated in the mortgage to R & H Construction Co. in the installments according to a schedule of percentages of completion of the buildings.

The Radspinners entered into such a contract with R & H Construction Co. on August 3, 1955, the Halls on August 22, 1955, and the McKechnies on September 3, 1955. At the time these contracts were entered into the lots selected by the Halls and the McKechnies were owned by Quentin S. Gonser and the lot selected by Radspinners was owned by Leo Schreiner and Ben Faber. It is apparent from the record that R & H Construction Co. did not wait for title and mortgage transactions to be completed before it started building. It ordered materials from suppliers, including the lien claimants herein, and commenced building at once.

On October 11, 1955, Gonser conveyed the selected lots to the Halls and the McKechnies by warranty deeds and on the same day Schreiner and Faber gave a deed to the Radspinners. At the same time the Halls and the McKechnies executed mortgages and assignments of rents to Consumer Sales Co. Inc. and the Radspinners executed like instruments the following day. All of these instruments were filed for record at the same time on October 17, 1955. Consumer Sales Company Inc., however, had assigned all three mortgages to Fidelity Loan Company on October 13, 1955.

■ In Schaffer v. Smith et al., supra, we held that unless a material man deals directly with the owner, he must give the owner notice that he is about to furnish materials to the contractor and the probable cost thereof, in order to lay a foundation for the filing of a valid lien and that if he fails to give such notice, a filed lien will be invalid. Par. 2. Sec. 35–1205 NDRC 1943. In the instant cases it is undisputed that all materials furnished, by the lien claimants to R & H Construction Co. were furnished at times during which the record titles to the lots, against

which the liens were filed, were either in the names of Gonser or Schreiner and Faber or in the plaintiffs. The lien claimants assert, however, either that Gonser and Schreiner and Faber were agents of R & H Construction Co. and acting for it, or that there was some agreement between these parties sufficient to create an equitable interest in R & H Construction Co. and thereby constitute R & H Construction Co. an owner of the lots within the purview of the mechanics lien law. There is no direct evidence in the record to support either such an agency or such a contract. The lien claimants urge that some such relationship must be inferred from the fact that R & H Construction Co. entered into contracts with plaintiffs to build houses on the lots and actually commenced construction of such houses while the legal title thereto was either in Gonser or in Schreiner and Faber. The record shows that Gonser acquired all these lots from R & H Construction Co. in the fall of 1954 and that he transferred the Radspinner lot to Schreiner and Faber in December 1954. These transfers were of record months before the plaintiffs had any negotiations with R & H Construction Co. R. H. Hillestad testified that he sold the lots to Gonser; that he had been paid in full for them and that Gonser owned them absolutely. Neither Gonser nor Schreiner nor Faber were called as witnesses.

Upon the evidence the trial court found that R & H Construction Co. had no interest whatever in lots, against which the liens were filed, at any time during which building materials were furnished. We are in accord with this finding. The burden of proof to establish such an interest, if it existed, was upon the lien claimants. The inference they would have us draw from the circumstances is contrary to the direct testimony of Mr. Hillestad. Furthermore, the inference that R & H Construction Co. retained an interest in the lots is less probable than other inferences that may be drawn from the circumstances. It may well be that Gonser, who purchased a large number of lots, in addition to those with which we are here concerned, entered into a real estate speculation because of Hillestad's promotion in the area; that he anticipated that most of the purchasers of such lots would be people who contracted with Hillestad and that he set prices at which he would sell lots to such contracting parties if the lots had not been previously sold. Such a tentative oral option for the benefit of unknown prospective clients of R & H Construction Co., if it did exist, would not vest any interest in, or right of dominion or control over, such lots in R & H Construction Co. This case is to be distinguished from Pudwill v. Bismarck Lumber Co., (ND) 89 N.W.2d 424, in that in the Pudwill case, Wanda Hillestad, the wife of R. H. Hillestad and a stockholder and officer of R & H Construction Co. was the record owner of the lots to which the lien claimant delivered building supplies.

Since these appellant lien claimants did not serve the notice required by subdivision 2 of Section 35–1205 NDRC 1943, their liens are invalid and the judgments of the district court are affirmed

SATHRE, C. J., SCHNELLER, D. J., and TEIGEN and MORRIS, JJ., concur.

STRUTZ, J., deeming himself disqualified did not participate.

Honorable CLIFFORD SCHNELLER, one of the Judges of the Third Judicial District, sitting in his stead.